**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

INTERSTATE PATENTS, LLC,

Plaintiff,

v.

BH SECURITY, LLC d/b/a BRINKS HOME,

Defendant.

CIVIL ACTION NO. 4:26-cv-1534

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

**JURY TRIAL DEMANDED**

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Interstate Patents, LLC ("Interstate Patents" or "Plaintiff") files this original complaint against Defendant BH Security, LLC d/b/a Brinks Home ("Brinks Home" or "Defendant"), alleging, based on its own knowledge as to itself and its own actions and based on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This action concerns Brinks Home's infringement of the following United States Patents (the "Asserted Patents"):

| U.S. Patent No. | Title |
|---|---|
| 8,163,591 | Backside Illuminated Image Sensor |
| 7,853,856 | Forming of Error Correction Data |
| 8,078,618 | Automatic Multimode System for Organizing and Retrieving Content Data Files |

**PARTIES**

2. Interstate Patents is a limited liability company formed under the laws of the State of Texas, with its principal place of business at 1909 Lohman Ford Road, Lago Vista, TX 78645.

3. BH Security, LLC is a limited liability company duly organized and existing under the laws of Delaware. Brinks Home may be served through its registered agent Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company at 211 E. 7th Street, Suite 620, Austin, TX, 78701.

4. BH Security, LLC does business as Brinks Home and Brinks Home Security. BH Security, LLC succeeded to, and continues to operate, the Brinks Home security business previously operated by its affiliate, Monitronics International, Inc. d/b/a Brinks Home, under the same Brinks Home name and using the same service-technician and authorized-dealer model described below.

5. Brinks Home is one of the largest providers of monitored home security and smart home solutions in the United States. It sells, leases, installs, monitors, and services the accused products for residential customers throughout the United States, including in the State of Texas generally and this judicial district in particular.

**JURISDICTION AND VENUE**

6. This is an action for infringement of United States patents arising under 35 U.S.C. §§ 271, 281, and 284–85, among others. This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

7. This Court has personal jurisdiction over Brinks Home pursuant to due process and/or the Texas Long Arm Statute because, *inter alia*, (i) Brinks Home has done and continues to do business in Texas; (ii) Brinks Home has committed and continues to commit acts of patent

infringement in the State of Texas, including making, using, offering to sell, and/or selling accused products in Texas, and/or importing accused products into Texas, including by Internet sales and/or sales via retail and wholesale stores, inducing others to commit acts of patent infringement in Texas, and/or committing at least a portion of any other infringements alleged herein; (iii) Brinks Home is registered to do business in Texas; and (iv) Brinks Home maintains its principal place of business in Texas and is therefore at home in Texas.

8. Venue is proper in this district as to Brinks Home pursuant to 28 U.S.C. § 1400(b) and/or 28 U.S.C. § 1391. Venue is further proper because Brinks Home has committed and continues to commit acts of patent infringement in this district, including making, using, offering to sell, and/or selling accused products in this district, and/or importing accused products into this district, including by Internet sales and sales via retail and wholesale stores, inducing others to commit acts of patent infringement in this district, and/or committing at least a portion of any other infringements alleged herein in this district, including directing and/or controlling the performance of at least one step of each exemplary method claim in this district. Brinks Home also has regular and established places of business in this district. For example, Brinks Home serves more than 14,700 customers in this district and assigns alarm service technicians to markets that include this district. Those technicians are Brinks Home employees who live and work in this district and do not report to a corporate office. Brinks Home provides each of them with a company vehicle and between $10,000 and $20,000 of Brinks Home equipment and inventory, including Accused Products, which the technicians store at their homes in this district. The technicians travel from those homes, in those vehicles and with that inventory, to deliver, install, and repair the Accused Products for Brinks Home customers in this district. *See IOT Innovations LLC v. Monitronics Int'l, Inc. d/b/a Brinks Home,* No. 2:22-cv-0432-JRG-RSP,

Report and Recommendation at 5–10 (E.D. Tex. Sept. 10, 2023) (finding that these facts established a regular and established place of business of the Brinks Home business in this district).

9. Additionally, Brinks Home conducts its business in this district through authorized service dealers that act as its agents from physical business locations in this district, including SmartTech Home Solutions, LLC in Sulphur Springs, Texas, whose building and service vehicles bear the Brinks Home logo, and Preventative Security Systems, Inc. in McKinney, Texas. Under Maintenance Service Agreements and Alarm Monitoring Purchase Agreements with Brinks Home, these dealers originate customers for Brinks Home and install, service, and maintain Brinks Home customers' security systems in this district. Brinks Home controls how the dealers perform installations and repairs, which products they use, the timing and location of customer installations, and their compliance with Brinks Home branding standards, and it provides them an application with directions to customer locations and step-by-step installation and repair instructions. *See id.* at 10–14 (finding venue proper under this agency theory as well).

10. Brinks Home employs or otherwise controls individuals that work from these places of business in this district, and Brinks Home's business specifically depends on such persons being physically present at such places to, for example, sell, install, service, and support the Accused Products for Brinks Home's customers.

**THE ACCUSED PRODUCTS**

11. Brinks Home makes, uses, sells, offers for sale, leases, installs, provides, supplies, and/or distributes security, smart home, and automation products and services to residential and business customers throughout the United States, including in Texas and in this district. *See* Exhibits 1–3.

12. Brinks Home extensively promotes the Accused Products. For example, Brinks Home advertises that the security panel in its "Complete" package "uses LTE cellular to ensure all alarms are sent fast and secure." *See* Exhibit 2. Brinks Home also instructs customers that, in the Brinks Home app, saved clips "with a valid person, vehicle, or animal classification appear here by default." *See* Exhibit 3.

13. Brinks Home uses, causes to be used, makes, sells, offers for sale, leases, provides, supplies, and/or distributes security cameras, security panels with built-in cellular communicators, software applications, and cloud-based services, including, but not limited to, the Brinks Home Outdoor Camera (ADC-V724), the Brinks Home Indoor Camera (ADC-V622), the Brinks Home SkyBell Doorbell Camera (ADC-VDB101/102/105/106), the Qolsys IQ Panel 4 security and home-management panel as branded, provided, and installed by Brinks Home (FCC ID 2AAJXQS-IQP4), the Brinks Home mobile application for iOS and Android, the Brinks Home customer web portal, other substantially similar products and services offered in the past or the future, and all prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions (collectively, the "Accused Products"). *See* Exhibits 1–3.

14. Using the Accused Products, Brinks Home and its customers capture, store, and view video and images from Brinks Home cameras; transmit and receive alarm signals and other data over cellular LTE networks, including with forward error correction; and organize, filter, and retrieve saved video clips through the Brinks Home app and web portal, including by camera, date range, and detected object type. *See* Exhibits 1–3.

15. For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

## COUNT I
## DIRECT INFRINGEMENT OF U.S. PATENT NO. 8,163,591

16. On April 24, 2012, United States Patent No. 8,163,591 ("the '591 Patent") was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "Backside Illuminated Image Sensor."

17. Interstate Patents is the owner of the '591 Patent, with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the '591 Patent against infringers, and to collect damages for all relevant times.

18. Brinks Home made, had made, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems including, for example, its Brinks Home-branded security cameras that infringe the '591 Patent.

19. By doing so, Brinks Home has directly infringed (literally and/or under the doctrine of equivalents) at least Claim 1 of the '591 Patent. *See* Exhibit 1. Brinks Home's infringement in this regard is ongoing.

20. Brinks Home's Outdoor Camera (ADC-V724), Indoor Camera (ADC-V622), and SkyBell Doorbell Camera (ADC-VDB101/102/105/106) are exemplary accused products.

21. As shown in Exhibit 1, the exemplary Brinks Home cameras are Alarm.com-platform cameras (bearing Alarm.com "ADC-" model numbers) that Brinks Home brands, sells, installs, and supports, and, on information and belief, incorporate backside-illuminated CMOS image sensors, such as those supplied by OMNIVISION and/or Sony for smart home and security cameras (for example, Sony STARVIS and STARVIS 2 sensors, which Sony describes as back-illuminated pixel technology for security cameras). In operation, light is provided at the

backside of the image sensor substrate and reflected onto the front side of the photodiode depletion region to generate and store a photoelectric charge, and a bias signal is applied at the front side of the depletion region to control its size. *See* Exhibit 1.

22. Brinks Home directly infringes the ’591 Patent when, for example, it and/or its agents use the accused products, including during testing of the accused products. Brinks Home also directly infringes the ’591 Patent when the accused products are used after purchase by a customer or end user. For example, the accused products are built with hardware and/or software components that control the operation of the accused products. These components cause the accused products to perform the steps of the claimed method after, for example, receiving light at the backside of the image sensor substrate. Brinks Home also directly infringes the ’591 Patent by exercising direction or control over the use of the accused products by others, including its affiliates, its subsidiaries, its business partners (e.g., certification/testing providers), its authorized dealers and installers, and/or its customers and end-users. Brinks Home contracts with, advises, and/or encourages such persons to engage in conduct satisfying one or more elements of the asserted claims, deriving a financial or other benefit (e.g., improved low-light sensitivity and image quality) from doing so. Brinks Home conditions these benefits on, for example, such persons performing certain activities involving the accused products during specified conditions that cause the accused products to perform the steps of the claimed method (e.g., capturing video or images using the backside-illuminated image sensor).

23. Brinks Home has had knowledge of the ’591 Patent at least as of August 20, 2026, when Interstate Patents sent Brinks Home a letter identifying the ’591 Patent and enclosing a claim chart detailing Brinks Home’s infringement of the ’591 Patent. *See* Exhibit 4.

24. Interstate Patents has been damaged as a result of the infringing conduct by Brinks Home alleged above. Thus, Brinks Home is liable to Interstate Patents in an amount that adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

25. Interstate Patents has neither made nor sold unmarked articles that practice the ’591 Patent, and is entitled to collect pre-filing damages for the full period allowed by law for infringement of the ’591 Patent.

## COUNT II
## DIRECT INFRINGEMENT OF U.S. PATENT NO. 7,853,856

26. On December 14, 2010, United States Patent No. 7,853,856 (“the ’856 Patent”) was duly and legally issued by the United States Patent and Trademark Office for an invention entitled “Forming of Error Correction Data.”

27. Interstate Patents is the owner of the ’856 Patent, with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the ’856 Patent against infringers, and to collect damages for all relevant times.

28. Brinks Home made, had made, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems including, for example, its Brinks Home-branded security panels with built-in LTE cellular communicators that infringe the ’856 Patent.

29. By doing so, Brinks Home has directly infringed (literally and/or under the doctrine of equivalents) at least Claim 13 of the ’856 Patent. *See* Exhibit 2. Brinks Home’s infringement in this regard is ongoing.

30. The Qolsys IQ Panel 4 security panel that Brinks Home brands, provides, and installs (FCC ID 2AAJXQS-IQP4) is an exemplary accused product.

31. As shown in Exhibit 2, the IQ Panel 4 is sold and installed as Brinks Home-branded hardware with a built-in Alarm.com cellular LTE communicator and incorporates a Quectel SC650T-NA LTE module. The accused panel receives data packets and error correction data packets and reconstructs missing data packets from the received data symbols and error correction symbols, including in accordance with the forward error correction scheme specified in 3GPP TS 26.346. *See* Exhibit 2.

32. Brinks Home directly infringes the ’856 Patent when, for example, it and/or its agents use the accused products, including during testing of the accused products. Brinks Home also directly infringes the ’856 Patent when the accused products are used after purchase by a customer or end user. For example, the accused products are built with hardware and/or software components that control the operation of the accused products. These components cause the accused products to perform the claimed functionality after, for example, receiving one or more data packets and one or more error correction data packets. Brinks Home also directly infringes the ’856 Patent by exercising direction or control over the use of the accused products by others, including its affiliates, its subsidiaries, its business partners (e.g., certification/testing providers), its authorized dealers and installers, and/or its customers and end-users. Brinks Home contracts with, advises, and/or encourages such persons to engage in conduct satisfying one or more elements of the asserted claims, deriving a financial or other benefit (e.g., improved reliability of alarm and data communications) from doing so. Brinks Home conditions these benefits on, for example, such persons performing certain activities involving the accused products during specified conditions that cause the accused products to perform the claimed functionality (e.g., after determining that not all transmitted data packets were received).

33. Brinks Home has had knowledge of the ’856 Patent at least as of August 20, 2026, when Interstate Patents sent Brinks Home a letter identifying the ’856 Patent and enclosing a claim chart detailing Brinks Home’s infringement of the ’856 Patent. *See* Exhibit 4.

34. Interstate Patents has been damaged as a result of the infringing conduct by Brinks Home alleged above. Thus, Brinks Home is liable to Interstate Patents in an amount that adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

35. Interstate Patents has neither made nor sold unmarked articles that practice the ’856 Patent, and is entitled to collect pre-filing damages for the full period allowed by law for infringement of the ’856 Patent.

**COUNT III**
**DIRECT INFRINGEMENT OF U.S. PATENT NO. 8,078,618**

36. On December 13, 2011, United States Patent No. 8,078,618 (“the ’618 Patent”) was duly and legally issued by the United States Patent and Trademark Office for an invention entitled “Automatic Multimode System for Organizing and Retrieving Content Data Files.”

37. Interstate Patents is the owner of the ’618 Patent, with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the ’618 Patent against infringers, and to collect damages for all relevant times.

38. Brinks Home made, had made, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems including, for example, its smart home platform, including the Brinks Home mobile application and web portal and associated display devices that infringe the ’618 Patent.

39. By doing so, Brinks Home has directly infringed (literally and/or under the doctrine of equivalents) at least Claim 21 of the ’618 Patent. *See* Exhibit 3. Brinks Home’s infringement in this regard is ongoing.

40. Brinks Home’s platform (including the Brinks Home mobile application for iOS and Android and the Brinks Home web portal), including as used with display devices such as the Qolsys IQ Panel 4 touchscreen and customers’ smartphones and tabletsis an exemplary accused product.

41. As shown in Exhibit 3, the Brinks Home platform stores customers’ saved video clips captured by Brinks Home cameras in a cloud storage location accessible to the display device, receives user requests for that content, and groups and presents the content on the display according to multiple different categorization methods, including by camera, date range,  and detected object type (e.g., people, vehicles, animals, and other objects). *See* Exhibit 3.

42. Brinks Home directly infringes the ’618 Patent when, for example, it and/or its agents use the accused products, including during testing of the accused products. Brinks Home also directly infringes the ’618 Patent when the accused products are used after purchase by a customer or end user. For example, the accused products are built with hardware and/or software components that control the operation of the accused products. These components cause the accused products to perform the claimed functionality after, for example, receiving a user request for saved video clips. Brinks Home also directly infringes the ’618 Patent by exercising direction or control over the use of the accused products by others, including its affiliates, its subsidiaries, its business partners (e.g., certification/testing providers), its authorized dealers and installers, and/or its customers and end-users. Brinks Home contracts with, advises, and/or encourages such persons to engage in conduct satisfying one or more

elements of the asserted claims, deriving a financial or other benefit (e.g., improved organization and retrieval of saved video clips) from doing so. Brinks Home conditions these benefits on, for example, such persons performing certain activities involving the accused products during specified conditions that cause the accused products to perform the claimed functionality (e.g., requesting and filtering saved video clips by camera, date range, or object classification).

43. Brinks Home has had knowledge of the ’618 Patent at least as of August 20, 2026, when Interstate Patents sent Brinks Home a letter identifying the ’618 Patent and enclosing a claim chart detailing Brinks Home’s infringement of the ’618 Patent. *See* Exhibit 4.

44. Interstate Patents has been damaged as a result of the infringing conduct by Brinks Home alleged above. Thus, Brinks Home is liable to Interstate Patents in an amount that adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

45. Interstate Patents has neither made nor sold unmarked articles that practice the ’618 Patent, and is entitled to collect pre-filing damages for the full period allowed by law for infringement of the ’618 Patent.

**ADDITIONAL ALLEGATIONS REGARDING INFRINGEMENT AND PERSONAL JURISDICTION**

46. Brinks Home has also indirectly infringed the ’591 Patent, the ’856 Patent, and the ’618 Patent, by inducing others to directly infringe the ’591 Patent, the ’856 Patent, and the ’618 Patent.

47. Brinks Home has induced the end users and/or Brinks Home’s customers to directly infringe (literally and/or under the doctrine of equivalents) the ’591 Patent, the ’856 Patent, and the ’618 Patent by using the accused products.

48. Brinks Home took active steps, directly and/or through contractual relationships with others, with the specific intent to cause them to use the accused products in a manner that infringe one or more claims of the ’591 Patent, the ’856 Patent, and the ’618 Patent, including, for example, claim 1 of the ’591 Patent, claim 13 of the ’856 Patent, and claim 21 of the ’618 Patent.

49. Such steps by Brinks Home included, among other things, advising or directing customers, end users, and others (including distributors, authorized service dealers, and equipment services entities) to use the accused products in an infringing manner; advertising and promoting the use of the accused products in an infringing manner; and/or distributing instructions that guide users to use the accused products in an infringing manner.

50. Brinks Home performed these steps, which constitute joint and/or induced infringement, with the knowledge of the ’591 Patent, the ’856 Patent, and the ’618 Patent and with the knowledge that the induced acts constitute infringement.

51. Brinks Home was and is aware that the normal and customary use of the accused products by Brinks Home’s customers would infringe the ’591 Patent, the ’856 Patent, and the ’618 Patent. Brinks Home’s inducement is ongoing.

52. Brinks Home has also induced its affiliates, or third-party manufacturers, shippers, distributors, retailers, or other persons acting on its or its affiliates’ behalf, to directly infringe (literally and/or under the doctrine of equivalents) at least claim 1 of the ’591 Patent, claim 13 of the ’856 Patent, and claim 21 of the ’618 Patent by importing, selling or offering to sell the accused products.

53. Brinks Home has a significant role in placing the accused products in the stream of commerce with the expectation and knowledge that they will be purchased by consumers in Texas and elsewhere in the United States.

54. Brinks Home purposefully directs or controls the making of accused products and their shipment to the United States, using established distribution channels, for sale in Texas and elsewhere within the United States.

55. Brinks Home purposefully directs or controls the sale of the accused products into established United States distribution channels, including sales to nationwide retailers, wholesalers, distributors, and manufacturers (including, but not limited to, Brinks Home's various affiliated and related companies).

56. Brinks Home purposefully directs or controls the sale of the accused products online and in nationwide retailers and wholesalers, including for sale in Texas and elsewhere in the United States, and expects and intends that the accused products will be so sold.

57. Brinks Home purposefully places the accused products—whether by itself or through subsidiaries, affiliates, or third parties—into an international supply chain, knowing that the accused products will be sold in the United States, including Texas. Therefore, Brinks Home also facilitates the sale of the accused products in Texas.

58. Brinks Home took active steps, directly and/or through contractual relationships with others, with the specific intent to cause such persons to import, sell, or offer to sell the accused products in a manner that infringe claim 1 of the '591 Patent, claim 13 of the '856 Patent, and claim 21 of the '618 Patent.

59. Such steps by Brinks Home included, among other things, making or selling the accused products outside of the United States for importation into or sale in the United States, or

knowing that such importation or sale would occur; and directing, facilitating, or influencing its affiliates, or third-party manufacturers, shippers, distributors, retailers, or other persons acting on its or its affiliates' behalf, to import, sell, or offer to sell the accused products in an infringing manner.

60. Brinks Home performed these steps, which constitute induced infringement, with the knowledge of the '591 Patent, the '856 Patent, and the '618 Patent, and with the knowledge that the induced acts would constitute infringement.

61. Brinks Home performed such steps in order to profit from the eventual sale of the accused products in the United States.

62. Brinks Home's inducement is ongoing.

63. Brinks Home has also indirectly infringed by contributing to the infringement of the '591 Patent, the '856 Patent, and the '618 Patent. Brinks Home has contributed to the direct infringement of the '591 Patent, the '856 Patent, and the '618 Patent by the end user of the accused products.

64. The accused products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe the '591 Patent, the '856 Patent, and the '618 Patent, including, for example, claim 1 of the '591 Patent, claim 13 of the '856 Patent, and claim 21 of the '618 Patent.

65. The special features include, for example, hardware and/or software components especially adapted for capturing images using backside-illuminated image sensors, reconstructing missing data packets using error correction data, and categorizing, organizing, and presenting saved content data files, used in a manner that infringe the '591 Patent, the '856 Patent, and the '618 Patent.

66. These special features constitute a material part of the invention of one or more of the claims of the ’591 Patent, the ’856 Patent, and the ’618 Patent, and are not staple articles of commerce suitable for substantial non-infringing use.

67. Brinks Home’s contributory infringement is ongoing.

68. Brinks Home has had actual knowledge of the ’591 Patent, the ’856 Patent, and the ’618 Patent at least as of August 20, 2026, when Interstate Patents sent a letter via FedEx and email to William Niles, President and Chief Executive Officer of Brinks Home, identifying Interstate Patents’ patent portfolio, including the ’591 Patent, the ’856 Patent, and the ’618 Patent, enclosing detailed claim charts showing how Brinks Home’s products infringe each of them, and expressly stating that the letter was meant to constitute actual notice under 35 U.S.C. § 287(a). *See* Exhibit 4. Brinks Home has also had knowledge of the ’591 Patent, the ’856 Patent, and the ’618 Patent at least as of the date when it was notified of the filing of this action. Since at least August 20, 2026, Brinks Home has known the scope of the claims of the ’591 Patent, the ’856 Patent, and the ’618 Patent, the products that practice the ’591 Patent, the ’856 Patent, and the ’618 Patent, and that Interstate Patents is the owner of the ’591 Patent, the ’856 Patent, and the ’618 Patent.

69. By the time of trial, Brinks Home will have known and intended (since receiving such notice) that its continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the ’591 Patent, the ’856 Patent, and the ’618 Patent.

70. Furthermore, Brinks Home has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Interstate Patents’ patent rights. *See, e.g.*, M. Lemley, “Ignoring Patents,” 2008 Mich. St. L. Rev. 19 (2008).

71. Brinks Home's customers have infringed the '591 Patent, the '856 Patent, and the '618 Patent. Brinks Home encouraged its customers' infringement.

72. Brinks Home's direct and indirect infringement of the '591 Patent, the '856 Patent, and the '618 Patent has been, and/or continues to be willful, intentional, deliberate, and/or in conscious disregard of Interstate Patents' rights under the patents-in-suit, including at least since Brinks Home received Interstate Patents' August 20, 2026 letter.

73. Interstate Patents has been damaged as a result of Brinks Home's infringing conduct alleged above. Thus, Brinks Home is liable to Interstate Patents in an amount that adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## **JURY DEMAND**

Interstate Patents hereby requests a trial by jury on all issues so triable by right.

## **PRAYER FOR RELIEF**

Interstate Patents requests that the Court find in their favor and against Brinks Home, and that the Court grant Interstate Patents the following relief:

a. Judgment that one or more claims of the '591 Patent, the '856 Patent, and the '618 Patent have been infringed, either literally and/or under the doctrine of equivalents, by Brinks Home and/or all others acting in concert therewith;

b. A permanent injunction enjoining Brinks Home and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringing the '591 Patent, the '856 Patent, and the '618 Patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of the '591 Patent, the '856 Patent, and the '618 Patent by such entities;

c. Judgment that Brinks Home account for and pay to Interstate Patents all damages

to and costs incurred by Interstate Patents because of Brinks Home's infringing activities and other conduct complained of herein, including an award of all increased damages to which Interstate Patents is entitled under 35 U.S.C. § 284;

d. That Interstate Patents be granted pre-judgment and post-judgment interest on the damages caused by Brinks Home's infringing activities and other conduct complained of herein;

e. That this Court declare this an exceptional case and award Interstate Patents its reasonable attorney's fees and costs in accordance with 35 U.S.C. § 285; and

f. That Interstate Patents be granted such other and further relief as the Court may deem just and proper under the circumstances.

Dated: October 20, 2026

Respectfully submitted,

*/s/ Zachariah S. Harrington*
Matthew J. Antonelli
Texas Bar No. 24068432
matt@ahtlawfirm.com
Zachariah S. Harrington
Texas Bar No. 24057886
zac@ahtlawfirm.com
Larry D. Thompson, Jr.
Texas Bar No. 24051428
larry@ahtlawfirm.com
Rehan M. Safiullah
Texas Bar No. 24066017
rehan@ahtlawfirm.com

ANTONELLI, HARRINGTON
& THOMPSON LLP
4306 Yoakum Blvd., Ste. 450
Houston, TX 77006
(713) 581-3000

*Attorneys for Interstate Patents, LLC*